H. C. SMITH, Appellant, v. ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY, Respondent.

Kansas City Court of Appeals, December 18, 1915.

PUNITIVE DAMAGES: Verdict: Jury: Court. In an action for damages for insulting and wrongfully ejecting a passenger from a train who had tendered proper fare, the jury returned a verdict for punitive damages in the sum of $500. The trial court suggested a remittitur of $400 which the plaintiff refused to enter and in consequence a new trial was granted. It was *held* that in such cases punitive damages and the amount are within the exclusive province of the jury and the court has no authority to disturb the verdict except the amount is so flagrantly outrageous as to force the conviction that the jury had abdicated its function, and become partizan or corrupt.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer*, Judge.

REVERSED AND REMANDED (*with directions*).

C. F. *Strop* for appellant.

*Culver & Phillips* for respondent.

ELLISON, P. J.—Plaintiff boarded defendant's electric passenger car at Gower, Missouri, for the purpose of being carried as a passenger to St. Joseph in the same State, a distance of twenty miles. He did not have a ticket, stating that he had not time to purchase one after his arrival at the station. The legal rate of fare was two cents per mile and according to that rate he tendered the conductor forty cents for the full distance he wished to go. The conductor refused the offer and demanded sixty cents which would be three cents per mile. Plaintiff refused to pay it and the conductor, in the presence of the passengers, told him he would stop the car and put him off. Plaintiff persisting in his refusal, the conductor stopped the car, took plaintiff by the arm and led him to the door and put him off. After being put off he stated to the conductor that he was a deputy sheriff and he "would like to go on." The conductor replied with an oath that he did not care who he was, he would not take him.

Plaintiff brought an action for one thousand dollars compensatory and the same amount as punitive damages. A trial was had and a verdict returned for. five dollars for the former and five hundred dollars for the latter. On motion for new trial the court suggested that the punitive damages were excessive and that if plaintiff would remit four hundred dollars, the motion for new trial would be overruled; if he did not it would be sustained. Plaintiff refused and a new trial was thereupon granted.

We have stated the facts as the evidence in plaintiff's behalf tended to establish them. There was positive and affirmative evidence having that tendency.

In such circumstances we cannot say that five hundred dollars was such a sum as to strike the moral sense as being excessive and returned by the jury from an improper motive. Within the bounds of reason the jury's discretion as to the amount of punishment is conclusive. To authorize the court to interfere it should appear that the sum returned in so large, or so small, as to show an utter lack of fair consideration.

But defendant insists that instead of looking into the record to see if there was any evidence in plaintiff's favor tending to support the verdict, we should endeavor to ascertain if there is any evidence in defendant's favor tending to support the conclusion of the trial court that the verdict was excessive. It being conceded that if a trial court granted a new trial on the ground that the verdict was against the weight of the evidence an appellate court will only look to see if there is any substantial evidence supporting the court's order, defendant claims that there is no difference in that instance and the case at bar. It therefore claims that as there was substantial evidence in the record tending to show the punitive damages assessed by the jury were excessive, we should affirm the order granting a new trial.

We think defendant misconceives both what the court did and what it had the power to do. In the first place the trial court did not grant a new trial to defendant because the court thought no case was made against it, or that there had been any error in the trial. The court found that plaintiff had a case, both for compensatory and punitive damages, and would have overruled the motion for new trial except the court took upon itself the duty of measuring the punitive damages and in so doing found they were to much and that unless plaintiff would remit down to one hundred

dollars, a new trial would be granted. Plaintiff's refusal to do so was the sole ground and immediate cause of granting a new trial. Therefore, as we have said, there being substantial evidence to support the verdict, it should be allowed to stand, unless the trial court properly ordered it to be reduced.

If there is evidence in a case which tends to support a verdict for punitive damages the court cannot interfere as to the amount except it be so disproportionate to the wrong committed by the defendant as to strike all reasonable men that the jury in fixing upon the sum found, have acted corruptly, or from passion and prejudice. It is a species of allowance made to the plaintiff not because it is his due, but as a punishment to the defendant and a detering example to others. While a plaintiff has an absolute right to compensation for a wrong committed against him, he has no absolute right to demand that the defendant be also punished. The jury *may* inflict the punishment, but it is left absolutely with them. So the Supreme Court has said "that it lies within the discretion of the jury as to whether or not punitive damages will be allowed in any case, and *is not a question for* the court." (Italics ours.) [Carson v. Smith, 133 Mo. 606, 617; Nicholson v. Rogers, 129 Mo. 136, 141.]

It must therefore belong exclusively to the jury to name the amount. Before there is any opportunity for the exercise of authority by the court over the amount of the verdict, the jury must by its conduct, have abdicated its function as a conscientiously deliberative body.

In Morgan v. Ross, 74 Mo. 318, 325 (affirmed in Hartpence v. Rogers, 143 Mo. 623, 638), the Supreme Court said: "In vindictive actions, and so this action is now regarded, damages are given for the two-fold purpose of setting an example and of punishing the wrongdoer. It is believed that no case can be found in the books where the verdict in an action such as this,

has been set aside upon the sole ground of awarding excessive damages. Peculiar considerations exempt a verdict in an action of this nature from the interference of the court, when such interference is sought to be bottomed alone on the excess of the recovery. The amount of the damages in such cases is considered a question peculiarly within the province of the jury, and as one which cannot from the very nature of things be estimated or computed upon any mere compensative or pecuniary basis; (Taylor v. Shelket, 66 Ind. 297) and courts certainly would not interfere with a verdict in this, or in kindred cases, where there is no scale whereby the damages can be graduated with certainty, unless proof be introduced showing flagrant abuse of those powers which the law had confided to the intelligence and good sense of the jury.''

In 3 Graham & Waterman on New Trials, 1135, the rule is summed up in these words: ''According to the language, of adjudged cases, to justify the court in setting aside a verdict, the damages ought to appear outrageous, or manifestly to exceed the injury, and such that all mankind would at once pronounce unreasonable, and so as to induce the court to believe the jury must have acted from prejudice or partiality, or were influenced by some improper considerations.'' In Sargent v. ————, 5 Cowen 106, 118, the court, in speaking of the authority of courts to supervise verdicts of juries for excessiveness in cases of this nature denied the right, save in those instances where the sum found ''was so flagrantly outrageous and extravagant, as necessarily to evince intemperance, passion, partiality or corruption on the part of the jury; and where that is not the case, the court will not undertake to set their judgment on a question of damages, in an action of this nature, in opposition to the judgment of the jury. It is the judgment of the jury and not of the court which is to determine the damages in actions for personal injuries.'' (Not meaning bodily injuries.)

Chancellor KENT wrote a learned and instructive opinion in Coleman v. Southwick, 9 Johns. 45, a case for libel, in which the plaintiff's verdict was attacked as being excessive. At page 51 of the report, he said that "The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike everyone with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality, or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries."

It is too apparent to question that the verdict in this case was not so flagrantly and outrageously beyond the limits of reason as to force a conviction of passion, prejudice or corruption on the part of the jury. Hence we will reverse the judgment and remand the cause with directions to enter judgment on the verdict as returned. All concur.